Devin Sreecharana, Esq. (SBN 029057)
Trevor J. Wainfeld, Esq. (SBN 037146)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
1850 N. Central Avenue, Suite 1600
Phoenix, AZ 85004-4633
Telephone:   (602) 252-1900
Facsimile:    (602) 252-1114
Email: devin@maypotenza.com
        twainfeld@maypotenza.com
*Attorneys for Plaintiff Sagit Paz-Safir*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Sagit Paz-Safir, an individual, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | **(Jury Trial Demanded)** |
| 1818 Holdings, L.L.C., an Arizona limited liability company; 7272 Partners, L.L.C., an Arizona limited liability company; 909 Partners, L.L.C., an Arizona limited liability company | |
| Defendants. | |

Plaintiff Sagit Paz-Safir ("Sagit"), for her Complaint against Defendants 1818 Holdings, L.L.C. ("1818"), 7272 Partners, L.L.C. ("7272"), and 909 Partners, L.L.C. ("909") (1818, 7272, and 909 collectively, the "Companies" or "Defendants"), states and alleges as follows:

**THE PARTIES**

1.      Sagit is an individual residing in Maricopa County, Arizona.

2.      1818 is, and was at all times material hereto, an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

3.      7272 is, and was at all times material hereto, an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

1

4. 909 is, and was at all times material hereto, an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

5. Under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("<u>FLSA</u>"), and the Arizona Wage Act the Companies are "employers" as defined by these statutes.

6. At all relevant times, Sagit was an "employee" of the Companies under the FLSA.

7. The provisions set forth in the FLSA apply to the Companies.

8. The provisions set forth in the Arizona Wage Act, A.R.S. Title 23, Articles 7 and 8 apply to the Companies.

9. At all relevant times, Sagit was an "employee" of the Companies as defined by A.R.S. § 23-350.

10. At all relevant times, the Companies were "employers" as defined by A.R.S. § 23-362.

11. Upon information and belief, Sagit, in her work for the Companies, was employed by an enterprise with an annual dollar volume of business done of at least $500,000.00.

12. At all relevant times, Sagit, in her work for the Companies, was engaged in commerce or the production of goods for commerce.

13. Sagit, in her work for the Companies, engaged in interstate commerce by, *inter alia*, making telephone calls or sending emails to persons out of state and engaging with out-of-state vendors.

14. The Companies directed and exercised control over Sagit's work and wages at all relevant times, through an enterprise or an agent.

15. The Companies are jointly and severally liable for the injuries and damages sustained by Sagit.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because at least one claim asserted herein arises under the laws of the United States and necessarily involves adjudication of one or more federal questions.

17. This Court has supplemental jurisdiction over Sagit's state law claims pursuant to 28 U.S.C. § 1367 because there is a common nucleus of facts relating to the Companies' wrongful practices.

18. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because the Companies (a) are all Arizona residents with their principal place of business in Arizona and (b) caused events to occur in Maricopa County, Arizona which form the basis for Sagit's claims against the Companies.

## GENERAL ALLEGATIONS

### A. The Companies

19. The Companies own or lease real property and thereon operate studio salons, leasing commercial space to cosmetologists who are not employed by the Companies.

20. Upon information and belief, Dov Safir ("Dov") was the sole member and manager of the Companies at all relevant times, except 1818, of which Jemin LLC is also a member.

21. Sagit and Dov are husband and wife pending marriage dissolution proceedings in Maricopa County Family Court, Case Number FC2020-006345.

22. Upon information and belief, 1818 has owned and operated a salon studio at the address 10201 N. Scottsdale Rd., Scottsdale, AZ 85253 since 2010.

23. Upon information and belief, 909 has owned and operated a salon studio at the address 16049 N. Arrowhead Fountains Center Dr., Peoria, AZ 85382 since approximately June 2012.

24. Upon information and belief, 7272 has owned and operated a salon studio at the address 3240 E. Camelback Rd, Phoenix, AZ 85018 since approximately June 2013.

### B. Sagit's employment with and compensation from the Companies

25. Sagit's employment with the Companies began upon the organization of each related business entity.

26. Each of the Companies promised to fairly compensate Sagit, through payment of wages, for her employment with the Companies.

27. Upon information and belief, Sagit was not assigned a job title in connection with her employment by the Companies.

28. During her employment with the Companies, Sagit was involved in the management and operation of the studio salons owned by the Companies.

29. Sagit performed all job duties under Dov's direction, supervision, and/or control.

30. From 2016 to April 2021, Sagit received monthly wage payments as compensation for the labor and services she provided to the Companies.

31. When Sagit was paid, she received a deposit from one of the Companies on behalf of all three Companies.

32. The Companies also provided Sagit certain benefits (*e.g.*, health insurance, car insurance, and travel expenses) and allowed her to use one of the Companies' vehicles.

33. The Companies, through Dov, hired, fired, paid, supervised, directed, disciplined, scheduled, and performed all other duties generally associated with that of an employer with regard to Sagit.

34. Upon information and belief, Dov was aware of and approved all the compensation and benefits Sagit received in connection with her employment.

35. Between approximately April 2018 and April 2021, Sagit worked full days including working in the Companies' offices approximately six days per week for approximately six hours per day when she and Dov were living in Phoenix.

36. At Dov's direction, Sagit was also on call seven days per week, twenty-four hours per day to address any issues that came up with salon studios' tenants and vendors or with the Companies outside of regular work hours.

37. Upon information and belief, at certain times during her employment, Sagit performed work at an hourly rate which was less than the applicable minimum wage.

38. Upon information and belief, the Companies did not compensate Sagit for all hours worked on their behalf during regular workweeks.

39. Upon information and belief, the Companies did not track Sagit's hours or provide Sagit with a tool to track the hours she worked each week.

40. When an employer fails to keep complete and accurate time records, employees may establish the hours worked by their testimony, and the burden of overcoming such testimony shifts to the employer.

41. Upon information and belief, the Companies failed to regularly and accurately maintain the record of time during which they permitted Sagit to work. Accordingly, the Companies' records of Sagit's time worked understate the actual duration of time Sagit worked during the duration of her employment.

42. Upon information and belief, the Companies failed to pay Sagit minimum wages and overtime wages for all hours worked in excess of forty hours per week. Accordingly, the Companies failed to pay Sagit minimum wages for all hours worked for the Companies and subsequently failed to pay Sagit overtime wages for all hours worked in excess of forty hours per workweek.

43. Upon information and belief, the Companies' conduct was willful because the Companies refused and/or failed to properly disclose to or apprise Sagit of her rights under FLSA.

C. **Aaron's Lawsuit against the Companies, Dov, and Sagit**

44. On February 24, 2021, Aaron Safir ("Aaron"), Dov's son from a marriage preceding his marriage to Sagit, filed a lawsuit against the Companies, Dov, and Sagit, styled as *Safir v Safir et. al.*, Case No. CV2021-003015 ("Aaron's Lawsuit"), asserting various contract and commercial tort claims against the defendants.

45. A primary basis for the lawsuit was a purported partnership agreement drafted, negotiated, and executed by and between Aaron and Dov whereby Dov assigned membership interests in the Companies to Aaron and agreed to additional compensation and perquisites for Aaron's benefit.

46. Sagit was not notified of, nor did she consent to, the purported partnership agreement between Dov and Aaron.

5

47. On April 7, 2021, Aaron, the Companies, Dov, and Sagit attended a private mediation where Aaron and the Companies settled Aaron's claims asserted against the Companies. No other parties settled.

48. On May 11, 2021, the Companies and Aaron entered into a written settlement agreement.

49. On June 8, 2021, Aaron dismissed the Companies from Aaron's Lawsuit.

50. On October 7, 2021, Aaron dismissed without prejudice Aaron's Lawsuit, in its entirety, which included his alleged derivative claims against Dov and Sagit on the Companies' behalves.

51. Aaron dismissed his Lawsuit before any discovery or disclosure occurred and before the merits of Aaron's Lawsuit were adjudicated.

### D. The Companies terminate Sagit's employment

52. Days after the parties' mediation in Aaron's lawsuit, on or about April 11, 2021, the Companies sent a letter to Sagit terminating her employment with the Companies "for cause" (the "Termination Letter").

53. The Companies did not previously discuss with Sagit the allegations giving rise to the alleged "cause" identified in the Termination Letter.

54. The Companies never formally warned Sagit for any of the conduct described in the Termination Letter, which left Sagit without an opportunity to address or correct any alleged deficiencies in her performance.

55. Sagit is unaware of any support for the alleged misconduct identified in the Termination Letter leading to the termination of her employment with the Companies.

56. The Companies alleged that Sagit's employment was terminated for, among other reasons, allegedly engaging in conduct identified in Aaron's Lawsuit.

57. Upon information and belief, the Companies failed to investigate the nature of the allegations and claims made in Aaron's Lawsuit.

58. Because Sagit acted under Dov's direction, supervision, and/or control during her employment with the Companies, Dov was aware and/or approved of every alleged instance of "serious wrongdoing" described in Aaron's Lawsuit.

59. The other reasons for "cause" provided by the Termination Letter either lack factual support or referenced actions or tasks Dov requested or approved.

60. Upon information and belief, Dov directed the Companies to terminate Sagit's employment in retaliation for Sagit filing for divorce from Dov, Sagit's challenge to Aaron's and Dov's business practices, and/or as part of an agreement between Dov and Aaron intended to preserve the Companies' assets for themselves and minimize or eliminate Sagit's marital community property interest in the same.

61. On November 29, 2021, Sagit, through counsel, sent a letter to the Companies and Dov indicating that the Companies had terminated Sagit's employment "for cause" improperly and demanded the Companies' factual, documentary, and legal support on which it relied to terminate her employment.

62. On December 14, 2021, the Companies and Dov replied by letter through shared counsel that they denied Sagit's factual and legal assertions, are not obligated to respond to them absent litigation, and would not provide the information or documents requested by Sagit that purportedly support the Companies' termination of her employment.

**COUNT ONE**
**(Breach of Contract)**
**(1818, 7272, 909)**

63. Sagit incorporates by reference all previous allegations as though fully set forth herein.

64. The Companies employed Sagit between 2010 and April 11, 2021.

65. In exchange for Sagit's employment, the Companies, through Dov, agreed to compensate Sagit.

66. The Companies' agreements to employ Sagit are valid and enforceable oral agreements (the "Employment Agreements").

7

67. Upon information and belief, the Companies failed to fully compensate Sagit for her employment.

68. Upon information and belief, no Company properly compensated Sagit overtime wages.

69. The Companies' failure to compensate Sagit standard and overtime wages constitute material breaches of the Employment Agreements.

70. As a direct and proximate result of each Company's material breach of its Employment Agreements with Sagit, Sagit has been damaged in an amount to be proven at trial.

71. Sagit is entitled to her reasonable attorneys' fees and costs under the Employment Agreements and/or A.R.S. §§ 12-341 and 12-341.01.

**COUNT TWO**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(1818, 7272, 909)**

72. Sagit incorporates by reference all previous allegations as though fully set forth herein.

73. The Employment Agreement Sagit had with each of the Companies contains an implied covenant of good faith and fair dealing.

74. Sagit reasonably expected that the Companies would each adhere to their respective obligations and duties to compensate Sagit for her employment under the Employment Agreements.

75. By engaging in the actions described herein, the Companies each failed to act in good faith, deliberately and unfairly depriving Sagit of her expected benefits and reasonable expectations under the Employment Agreements.

76. By terminating Sagit's employment for unsupported causes, without first discussing those causes with Sagit, the Companies failed to act in good faith.

77. Additionally, to the extent the Companies terminated Sagit's employment in retaliation for the circumstances described in paragraph 60 herein or otherwise, the Companies failed to act in good faith.

78. Upon information and belief, the Companies acted intentionally to deprive Sagit of the benefit of her bargain under the Employment Agreements.

79. By engaging in the actions described herein, the Companies each breached the implied covenant of good faith and fair dealing.

80. As a direct and proximate result of the Companies' breaches of the implied covenant of good faith and fair dealing, Sagit has been damaged in an amount to be proven at trial.

81. Upon information and belief, the Companies' actions were willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Sagit to an award of punitive damages sufficient to deter each of them from engaging in conduct similar to that described herein.

82. Sagit is entitled to her reasonable attorneys' fees and costs under the Agreements and/or A.R.S. §§ 12-341 and 12-341.01.

## COUNT THREE
### (Unjust enrichment)
### (1818, 7272, 909)

83. Sagit incorporates by reference all previous allegations as though fully set forth herein.

84. The Companies have each been unjustly enriched by their acceptance of Sagit's employment without full payment of wages and/or overtime wages to Sagit.

85. Upon information and belief, each of the Companies have been unjustly enriched by their acceptance of Sagit's employment services from approximately 2018 to April 2021 without full payment of wages and/or overtime wages to Sagit.

86. Sagit has been impoverished because of the Companies' unlawful and unauthorized failures to compensate Sagit fully and adequately for her employment services.

87. Upon information and belief, there is no justification for the Companies' unjust enrichment or Sagit's resulting impoverishment.

88. As a direct and proximate result of the Companies' unjust enrichment, Sagit has been damaged at an amount to be proven at trial.

89. If Sagit's Employment Agreements with the Companies are determined to be invalid or unenforceable contracts, in whole or in part, then there may be no other legal remedy available to Sagit regarding the Companies' failures to fully and fairly compensate Sagit. To the extent Sagit is denied a contractual remedy, unjust enrichment is pled in the alternative.

**COUNT FOUR**
**(Failure to Pay Wages – A.R.S. § 23-350 *et seq*.)**
**(1818, 7272, 909)**

90. Sagit incorporates by reference all previous allegations as though fully set forth herein.

91. Sagit is an "employee' as defined by A.R.S. § 23-350(2).

92. The Companies are each an "employer" as defined by A.R.S. § 23-350(3).

93. Sagit provided the Companies with labor or services with a reasonable expectation of being paid.

94. The Companies permitted Sagit to provide labor or services, and accepted such labor and services, with the promise or understanding that Sagit would be paid.

95. The labor or services provided to the Companies by Sagit are "wages" as defined by A.R.S. § 23-350(6).

96. Upon information and belief, each Company failed to pay Sagit all wages earned during her employment by each Company in violation of A.R.S. § 23-350 *et seq*.

97. Upon information and belief, by failing to pay Sagit all wages due to her, the Companies have wrongfully violated the provisions of A.R.S. § 23-352 which prohibits an employer from withholding the payment of wages from an employee without legal authority, prior written permission from the employee, or a claim against the employee that would be a set-off against unpaid wages.

98. Upon information and belief, Sagit does not qualify for an exemption to its obligations to timely pay wages or commission to Sagit.

99. Pursuant to of A.R.S. § 23-355, Sagit is entitled to recover treble the unpaid and untimely paid wages owed by the Companies to be proven at trial.

100. Sagit is also entitled to interest on all unpaid wages at the highest rate permitted by law until paid in full.

**COUNT FIVE**
**(Failure to Pay Wages – 29 U.S.C. § 201 *et seq*.)**
**(1818, 7272, 909)**

101. Sagit incorporates by reference all previous allegations as though fully set forth herein.

102. The Companies' failure to pay Sagit at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206 (a).

103. Upon information and belief, none of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to Defendant or Plaintiffs.

104. Upon information and belief, the Companies' failure to pay all wages due was knowing, willful, not taken in good faith and done with the Companies' full knowledge and consent.

105. Sagit is entitled to compensation for full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees and costs.

**COUNT SIX**
**(Failure to Pay Overtime –29 U.S.C. § 201 *et seq*.)**
**(1818, 7272, 909)**

106. Sagit incorporates by reference all previous allegations as though fully set forth herein.

107. Upon information and belief, Sagit regularly worked in excess of forty hours per workweek.

108. Sagit was to be paid an hourly wage in exchange for services as an employee.

109.   The Companies' failure to pay Sagit one-and-one-half times the applicable hourly rate of pay for all hours worked in excess of forty hours per week violates the FLSA, 29 U.S.C. § 207.

110.   Upon information and belief, none of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one-and-one-half times the applicable hourly rate at which employees are employed are applicable to the Companies or Sagit.

111.   Upon information and belief, the Companies' failure to pay all wages due was knowing, willful, not taken in good faith and done with the Companies' full knowledge and consent.

112.   Sagit is entitled to compensation at the applicable overtime rate for all hours worked in excess of forty hours per week, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Sagit requests that the Court enter Judgment in her favor and against the Companies, jointly and severally, as follows:

A. declare and find that the Companies have violated A.R.S. § 23-350 *et seq.* by failing to pay wages owed to Sagit;

B. declare and find that the Companies violated the minimum wage provisions of the FLSA, 29 U.S.C § 206, by failing to pay proper minimum wages;

C. declare and find that the Companies violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay proper overtime wages;

D. awarding Sagit unpaid minimum wage damages, to be determined at trial;

E. awarding Sagit compensatory damages, including treble the amount of wages owed to Sagit pursuant to A.R.S. § 23-355, in an amount to be proven at trial;

F. awarding Sagit her unpaid overtime damages, in an amount to be proven at trial;

G.  awarding Sagit compensatory damages, including liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216(b), in an amount to be proven at trial;

H.  awarding Sagit punitive damages to the extent permitted by law, sufficient to deter Defendants from engaging in conduct similar to that described herein;

D.  awarding pre-judgment and post-judgment interest on any award of damages at the maximum rate provided under applicable law, from the date of judgment until paid in full;

E.  awarding Sagit her reasonable attorneys' fees and costs incurred in this action as permitted by applicable law;

F.  the continuing jurisdiction of this Court to review to ensure compliance with the Court's orders and determine the reasonableness and award of any post-judgment costs and attorneys' fees sought by Sagit; and,

G.  awarding Sagit such other and further relief as this Court deems just, necessary, and proper.

RESPECTFULLY SUBMITTED this 11th day of April, 2022.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By: s/ *Devin Sreecharana*
Devin Sreecharana, Esq.
Trevor J. Wainfeld, Esq.
*Attorneys for Plaintiff*